UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
SABRINA MILO,

      -against-

           Plaintiff.

**CV 14**       **1172**

    COMPLAINT
    AND DEMAND FOR
    JURY TRIAL

THE CITY OF NEW YORK and
P.O. GREG E. EVERT

          Defendants.
-----------------------------------------------------------x

    Plaintiff, SABRINA MILO, by and through her attorneys, THE NEVELOFF LAW FIRM,

PC, complaining of the defendants herein, respectfully shows the Court and alleges:

## PRELIMINARY STATEMENT

    1.  Plaintiff brings this action for compensatory damages, punitive damages, and

attorney's fees pursuant to 42 U.S.C. §§ 1981, 1983, and 1988, for the wrongful acts of

Defendants THE CITY OF NEW YORK and P.O. GREG E. EVERT, as an Officer of the New

York City Police Department, acting under color of state law and pursuant to their authority, in

violation of Plaintiff's rights secured by the Civil Rights Act of 1871, 42 U.S.C. §§ 1981, 1983,

1988; by the United States Constitution, including its First, Fourth and Fourteenth Amendments;

and by the laws and Constitution of the State of New York.

## JURISDICTION

    2. This action is brought pursuant to 42 U.S.C. §§ 1981, 1983, and 1988, and the First,

Fourth and Fourteenth Amendments to the United States Constitution, and the constitutional, statutory, and common laws of the State of New York.

3. Jurisdiction is invoked herein pursuant to the aforementioned statutory and constitutional provisions and pursuant to 28 U.S.C. §§ 1331, 1343, this being an action seeking redress for the violation of the plaintiff's constitutional and civil rights.

## VENUE

5. Venue is properly laid in this District under 28 U.S.C. § 1391(b), this being the District in which the claim arose.

## TRIAL BY JURY

6. Plaintiff demands a trial by jury on each and every one of his claims as pled herein pursuant to Fed. R. Civ. P.38(b).

## PARTIES

7. At all times relevant hereto Plaintiff was and is a resident of Richmond County in the State of New York, in the Eastern District of New York.

8. At all times relevant hereto, Defendant THE CITY OF NEW YORK (hereinafter, "NYC") was and is a municipality of the State of New York and owns, operates, manages, directs, and controls the New York City Police Department (hereinafter "NYPD"), which employs the other named Defendant.

9. At all times relevant to this action, Defendant P.O. GREG E. EVERT is and was a

police officer employed by the New York City Police Department and acting under color of state law. He is being sued in both his individual and official capacities.

10. At all times relevant hereto and in all their actions described herein, Defendants NYC and P.O. GREG E. EVERT were acting under color of statutes, ordinances, regulations, policies, customs, and usages of the NYPD and NYC, pursuant to their authority as employees, servants, and agents of the NYPD within the scope of employment and incidental to their otherwise lawful duties and functions as an employee, servant, agent, and police officer.

11. NYC was responsible for the hiring, training, supervision, discipline, retention, and promotion of the police officers and/or employees of the NYPD.

## FACTS

12. Plaintiff SABRINA MILO (hereinafter "Plaintiff") was a 35 year old Art Teacher for the City of New York Department of Education. On September 13, 2001, Plaintiff started teaching at Ft. Hamilton High School located at 8301 Shore Rd., Brooklyn, NY 11209. Plaintiff became a tenured teacher on or about June 2004.

13. Plaintiff had received her B.A. in Art History from New York University in 1998 and had received her Masters in Art Education in 2001 from Brooklyn College. As an Art Teacher, Plaintiff would teach students Collage, Drawing, Basic Art, AP Art History, AP Drawing, AP 2-D Design, AP 3-D Design, and Core Art, a preparatory portfolio course. Plaintiff received NYSATA's New York City Art Teacher of the Year Award in 2007.

14. On March 30, 2011 at approximately 12:45 p.m., Plaintiff was on break during 8th period at the teachers' lounge located at Ft. Hamilton High School. Plaintiff had just received a letter signed by Assistant Principal Barbara Vellucci, whereby there was a finding that that

Plaintiff made inappropriate comments that embarrassed a student in her class. Plaintiff spoke briefly to her union representative about the letter and was unhappy with its contents.

15. Plaintiff was upset with the findings because the student had been disrespectful to Plaintiff and had cursed her out. Plaintiff was also angered by the fact that the Principal of Ft. Hamilton High School, Jo Ann Chester, had personal issues with Plaintiff, as the letter received by Plaintiff included allegations that were not part of this student's complaints.

16. Plaintiff strongly suspected that Principal Chester was trying to get Plaintiff terminated and was treating Plaintiff unfairly and being dishonest. Assistant Principal Vallucci had a history and reputation of doing Principal Chester's bidding. Principal Chester was subsequently terminated from the Department of Education on or about August 2012 after the Office of Special Investigations found that Principal Chester contrived a system to use substitute teachers for more than a year at a time without adding them to the school's teaching roster and for creating false documents.

17. When Plaintiff entered the Teachers' Lounge that afternoon of March 30, 2011 Plaintiff was extremely visibly upset and was shaking and crying. Plaintiff started to vent and express her exasperation at the way the administration was treating her. The Teachers' Lounge was a "safe haven" where teachers would discuss personal problems, vent their frustrations and confide in each other. Fellow teachers Gloria Minigione, Alan Zeitland, Johnny Rosero, Nanetta Lopinto, Kalli Zervos and Terry Papantonio were already in the Teachers' Lounge.

18. Plaintiff sat down at a table next to her friend, fellow teacher Gloria Minigione, and out of frustration, Plaintiff said something to the effect of "if I had a trench coat and a shotgun, it would be Columbine all over again." Gloria Minigione then said "don't say that" and Plaintiff

responded "I'm sorry. I'm just so frustrated right now. This is how I feel." Gloria Minigione

then shook her head and mouthed the word "no."

19. Plaintiff used this figure of speech as a way to express how irritated she was at

Principal Chester and Vice Principal Vallucci. Plaintiff was not being literal or serious and had

no history of making threats or behaving violently.

20. By the end of her break, Plaintiff had composed herself and continued her work day.

Plaintiff was in the Teachers' Lounge for a total of approximately ten to fifteen minutes. None of

the other teacher's said anything to Plaintiff about her statement or acted in any manner that

would indicate that they feared that Plaintiff would act out on her crude statement.

21. Plaintiff was known by her co-workers to have a sarcastic sense of humor and would

sometimes make edgy comments. When Plaintiff made the aforementioned statement, Plaintiff

was venting and was not actually making any threats to anyone. No reasonable person would

have taken Plaintiff's comments literally or seriously.

22. After her break, Plaintiff returned to her classroom and taught 9th period class.

Plaintiff remained at the school until approximately 3:00 p.m. that day. Before leaving for the

day, Plaintiff said goodbye to Gloria Minigione and other colleagues. There was no mention

about Plaintiff's statement or indication that anything was out of the ordinary.

23. Plaintiff arrived at work the next day, March 31, 2011, at approximately 7:30 a.m.

Plaintiff made her usual coffee for herself and her fellow teachers in the Teachers' Lounge and

spoke normally to Gloria Minigione and some of the other teachers and proceeded with her usual

Thursday schedule. Again, none of her fellow teachers mentioned Plaintiff's statements or inquired into how she was feeling.

24. Plaintiff taught her morning schedule that day from 8:10 a.m. to 2:45 p.m. At approximately 11:15 a.m. Plaintiff took her usual break in the Teachers' Lounge and her behavior was normal as she spoke with the above mentioned colleagues. Plaintiff then returned to teach her 9th period class and left the school at approximately 3:00 p.m.

25. On April 1, 2011, Plaintiff arrived at work at approximately 7:15 a.m. and again performed her normal routine. Classes began and she started teaching her students about art. At approximately 11:15 a.m., during 5th period, Plaintiff was asked by her department supervisor, Mr. Thomas Oberle, to attend an unscheduled "meeting" at his office and to bring all of her belongings. When Plantiff asked about teaching her subsequent period, Mr. Oberle stated that another teacher would be there. Plantiff said that she would use the restroom first and meet him in the office. Mr. Oberle escorted her to the second floor restroom and waited outside of the door, and continued to escort her directly to his office. After getting in touch with her union representative, who thereafter arrived to speak with her, Plaintiff remained seated in his Mr. Oberle's office as instructed.

26. That day, on April 1, 2011 at approximately 12:40 p.m., four uniformed NYPD police officers slammed the door open violently and rushed into the office. An officer, later identified as Defendant P.O. GREG E. EVERT stated to Plaintiff "Are you Sabrina Milo?" and when Plaintiff responded "Yes," Defendant P.O. GREG E. EVERT stated "Stand up and turn around. You're under arrest." Defendant P.O. GREG E. EVERT arrested Plaintiff and placed her in handcuffs behind her back. The handcuffs were secured tightly, but the police officers

refused to loosen them despite Plaintiff's request. Plaintiff was escorted from the school and placed into an awaiting NYPD police van.

27.  Plaintiff was transported to the 68th Precinct where she was handcuffed to a metal pole. For the first four hours, the police officers refused to tell Plaintiff why she was under arrest. After Plaintiff refused to be processed until she was told why she was arrested, she was finally told by a police officer that it was for "making a terrorist threat, which is a felony sentence that carries ten years." Plaintiff was in total shock and disbelief.

28.  After being processed, Plaintiff was again handcuffed to a pole from approximately 1:00 p.m. to 10:00 p.m., and was only un-handcuffed to be processed, to use the restroom once, and to see her attorney. The NYPD officers refused to allow Plaintiff to make a phone call and she only learned at a later time that her union representative had contacted an attorney on her behalf.

29.  Over the aforementioned ten hours, Plaintiff was not given any food or water. While being held at the station, NYPD officers openly mocked Plaintiff about being a "terrorist" and stated "Why are you being such a cry baby? You're a terrorist." Plaintiff was humiliated and terrified.

30.  Plaintiff continued to beg NYPD officers for water as she told them that she suffered from a medical condition, hypoglycemia, which required her to drink plenty of water. An NYPD officer responded "Do you have a dollar?" to which Plaintiff responded "No, you took everything when you arrested me." The NYPD officer just laughed at her and stated "I guess you're not getting water then."

31.  Plaintiff's attorney advised Plaintiff that she had the right to go to the hospital for her medical condition and after Plaintiff made the request, EMS came to attend to her at the Precinct

between approximately 10:00 p.m. and 11:00 p.m. She was then transported to Lutheran Medical Center.

32. Plaintiff was placed in leg shackles and handcuffed behind her back. Plaintiff was very physically weak at this point and while NYPD officers escorted her to the police van, a photographer started taking photographs in close proximity of Plaintiff with the flash was going off directly into Plaintiff's face.

33. When Plaintiff arrived at Lutheran Medical Center, the NYPD kept her in handcuffs and leg shackles for approximately four hours while she waited to be attended to in the Emergency Room in full view of the public and hospital personnel. Plaintiff felt that her blood sugar was so low that she would pass out. Plaintiff was eventually treated, given some food and allowed to rest in a bed for a few hours while remaining shackled to the bed. Plaintiff was also given some, but not all of the medication that she was taking at the time.

34. On March 31, 2011, at approximately 6:00 a.m., Plaintiff was transported back to the 68th Precinct and was kept in a holding cell until approximately 10:00 a.m. An NYPD officer told Plaintiff that she was going to be taken to Central Booking and that they were taking Plaintiff out of the back entrance. When Plaintiff asked if this was normal procedure the officer responded "No, but you're not a normal case." The same officer showed Plaintiff the front cover of the New York Post newspaper, which showed Plaintiff in handcuffs, crying and in visible distress. This shocked, horrified and embarrassed Plaintiff.

35. Plaintiff was transported to Central Booking and an NYPD police officer told Plaintiff that she was "high profile" and in every newspaper, and on every news channel right now. When Plaintiff was brought into Central Booking, other prisoners taunted Plaintiff and screamed "terrorist!" while they clanked on the metal cell bars.

36.  While at Central Booking, Plaintiff saw that the vast majority of the police officers and employees at Central Booking had newspapers with Plaintiff's photograph on the covers. They mocked Plaintiff and pointed to the newspapers and then to Plaintiff and laughed.  The NYPD officers intentionally showed the newspapers to other prisoners to get then riled up, so they would taunt, mock and threaten Plaintiff further.  Plaintiff continued to cry and was fearful of future bodily harm.

36.  Plaintiff was arraigned and charged under NYPL § 490.20 - Making a terroristic threat.  No other charges were brought against her.  The Judge set bail at $100,000.00 and Plaintiff was advised that because of the amount of bail that she had to be processed through Riker's Island.  Plaintiff was hysterical crying and screamed repeatedly that "You are not taking me to Rikers!"  Plaintiff was then allowed to make a phone call and to speak with her husband for the first time.

37.  Plaintiff was taken to Riker's Island on April 2, 2011 at approximately 2:00 p.m. Plaintiff was severely distraught at this time and was put on suicide watch.

38.  Plaintiff was processed and cavity searched before being taken to a cell with no working water faucet or toilet.  Plaintiff was not given, food, water or medication.  Plaintiff was held at Riker's Island until April 3, 2011 at approximately 1:00 p.m.  Plaintiff was then transferred to Elmhurst Psychiatric Hospital for civil discharge.

39.  At Elmhurst Psychiatric Hospital, Plaintiff was examined by a psychiatrist who ordered that Plaintiff remain at the hospital for another twenty-four hours.  After being surrounded by other patients who were violently mentally ill, Plaintiff was finally placed in a private room at approximately 8:00 p.m. to 9:00 p.m.  On the next day, April 4, 2011, as she was being discharged, Plaintiff was told by an orderly that her face was on the television and to "Run

Sabrina, run right now." Plaintiff was released from Elmhurst Hospital April 4, 2011 at

approximately 3:00 p.m. and was picked up by her husband.

40. Plaintiff's husband gave her a hooded sweatshirt and sunglasses as the press had been

camped out in front of Plaintiff's house in Staten Island, harassing her neighbors, her stepson and

her husband's daughter in Colorado. Plaintiff arrived at her house and was harassed by the press.

41. The Criminal Complaint made by defendant P.O. GREG E. EVERT dated April 1,

2013 stated the following:

That the Complaint charged Plaintiff with the following offense:

POLICE OFFICER GREG E EVERT SHIELD NO. 17783, OF 068 COMMAND SAYS THAT ON OR ABOUT
MARCH 29, 2011 AT APPROXIMATELY 12:30 PM AT 8301 SHORE ROADS COUNTY OF KINGS, STATE
OF NEW YORK,

THE DEFENDANTS COMMITTED THE OFFENSE(S) OF:

PL 490.20                              MAKING A TERRORIST THREAT  (DQO)

IN THAT THE DEFENDANT DID:

WITH INTENT TO INTIMIDATE OR COERCE A CIVILIAN POPULATION, INFLUENCE THE POLICY OF
A UNIT OF GOVERNMENT BY INTIMIDATION OR COERCION, OR AFFECT THE CONDUCT OF A UNIT
OR GOVERNMENT BY MURDER, ASSASSINATION OR KIDNAPPING, HE OR SHE THREATENED TO
COMMIT OR CAUSE TO BE COMMITTED A SPECIFIED OFFENSE AND THEREBY CAUSES A
REASONABLE EXPECTATION OR FEAR OF IMMINENT COMISSION OF SUCH OFFENSE.

THE SOURCE OF DEPONENT'S INFORMATION AND THE GROUNDS FOR DEPONENT'S BELIEF ARE
AS FOLLOWS:

THE DEPONENT IS INFORMED BY GLORIA MINGIONE THAT, AT THE ABOVE TIME AND PLACE
WHICH IS A PUBLIC HIGH SCHOOL, THE DEFENDANTS WHILE IN THE PRESENCE OF OTHER
TEACHERS IN THE TEACHERS AND INDIVIDUALS STATED TO THE INFORMANT IN SUM AND
SUBSTATNCE THAT DEFENDANT WANTED TO BRING A MACHINE GUN UNDER A TRENCH COAT
TO SCHOOL AND THAT IT WILL BE COLUMBINE ALL OVER AGAIN.

THE DEPONENET IS INFORMED BY THE INFORMANT THAT THE ABOVE DESCRIBED ACTIONS
CAUSE INFORMANT TO BECOE ALARMED AND ANNOYED.

42. That a grand jury was convened in Criminal Court of the City of New York, County

of Kings. The grand jury did not indict Plaintiff for "Making a terroristic threat." On or about

April 15, 2011 the charges against Plaintiff were dismissed. No other or further charges

regarding this incident brought against Plaintiff by the Kings County District Attorney's office or any other governmental entity.

43. That there was no warrant for Plaintiff's arrest.

44. That there was not sufficient probable cause to arrest Plaintiff for the crime of "Making a Terroristic Threat."

45. That there was not sufficient probable cause to arrest Plaintiff for any crime.

46. That almost forty-eight (48) hours had passed from the time Plaintiff made the statement and the time of her arrest. During that time period Plaintiff taught her classes and conducted her normal teaching duties. In addition, Plaintiff interacted with her students and fellow teachers in the usual ordinary way.

47. That there was not sufficient probable cause to arrest Plaintiff for making an "imminent" threat as there was no immediacy to the circumstances.

48. That there was not sufficient probable cause to arrest Plaintiff, as there was no "reasonable expectation or fear" of the commission of the charged offense or any other offense.

49. That Plaintiff did not make a serious expression of an "intent to intimidate or coerce," and was just venting over her perceived harassment by her Principal and Assistant Principal.

50. That Plaintiff did not make a "true threat."

51. That the Complaint and supporting deposition of Gloria Minigione fails to even allege that Plaintiff placed a civilian population, the government or anyone in "fear" of anything. Gloria Manigione's deposition merely states that she was "alarmed" and "annoyed."

52.  That defendant P.O. GREG E. EVERT failed to consider the context and circumstances of Plaintiff's statement and arrested Plaintiff without reasonable suspicion and sufficient probable cause.

53.  That Plaintiff's statement did not satisfy the elements of the crime for which she was arrested.

54.  That Plaintiff's statement did not satisfy the elements of any crime.

55.  That as a result of the foregoing, Plaintiff was put on leave following this incident and was eventually pressured into resigning as a teacher with the New York City Department of Education by surrendering her License in Art Education (K-12).

56.  That as a direct and proximate result of the Defendants' violations of Plaintiff's constitutional rights, Plaintiff has suffered severe and substantial damages.  These damages include lost salary, lost employee benefits, lost raises, diminished earnings capacity, lost career and business opportunities, litigation expenses including attorney fees, loss of reputation, humiliation, embarrassment, inconvenience, physical injuries, mental and emotional anguish and distress, severe psychological damage and other compensatory damages, in an amount to be determined by a jury and the Court.

## FIRST CLAIM FOR RELIEF:
## DEPRIVATION OF FEDERAL CIVIL RIGHTS

57.  Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in paragraphs 1 through 56 with the same force and effect as if fully set forth herein.

58.  All of the aforementioned acts of Defendants, their agents, servants, and employees

were carried out under color of state law.

59. All of the aforementioned acts deprived Plaintiff of the rights, privileges, and immunities guaranteed citizens of the United States by the First, Fourth and Fourteenth Amendments to the Constitution of the United States and in violation of 42 U.S.C. § 1983.

60. In violating Plaintiffs' rights as set forth above and other rights that will be proven at trial, Defendants acted under color of state law and conducted an unauthorized, warrantless illegal stop, search, and seizure of Plaintiff. The illegal and warrantless arrest set into motion the chain of events that led to an unauthorized and warrantless illegal search and seizure, false arrest, false imprisonment, the use of excessive force, violation of Plaintiffs right to free speech, in violation of Plaintiffs' rights under the First, Fourth and Fourteenth Amendments to the Constitution of the United States.

61. As a direct and proximate result of the violation of their constitutional rights by the Defendants, Plaintiff suffered general and special damages as alleged in this Complaint and is entitled to relief under 42 U.S.C §1983.

62. The conduct of Defendants were willful, malicious, oppressive and/or reckless, and was of such a nature that punitive damages should be imposed in an amount commensurate with the wrongful acts alleged herein.

63. The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers, with the entire actual and/or apparent authority attendant thereto.

64. The acts complained of were carried out by the aforementioned individual Defendant in his capacity as a police officer, pursuant to the customs, usages, practices,

procedures, and rules of NYC and the NYPD, all under the supervision of ranking officers of said department.

65. Defendants, collectively and individually, while acting under color of state law, engaged in conduct which constituted a custom, usage, practice, procedure, or rule of his/her respective municipality/authority, which is forbidden by the Constitution of the United States.

66. As a direct and proximate result of the Defendants' violations of Plaintiff's constitutional rights, Plaintiff has suffered severe and substantial damages. These damages include lost salary, lost employee benefits, lost raises, diminished earnings capacity, lost career and business opportunities, litigation expenses including attorney fees, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish and distress and other compensatory damages, in an amount to be determined by a jury and the Court.

67. By these actions, these Defendants have deprived Plaintiff of rights secured by the First, Fourth and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983, for which the Defendants are individually liable.

## SECOND CLAIM FOR RELIEF:
## FALSE ARREST UNDER 42 U.S.C. § 1983

68. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in paragraphs 1 through 67 with the same force and effect as if fully set forth herein.

69. That the Defendants falsely arrested Plaintiff in that Defendants arrested Plaintiff, intended to confine Plaintiff, the Plaintiff was conscious of the confinement, the Plaintiff did not consent to the confinement and the confinement was not otherwise privileged.

70. That there was no sufficient probable cause for Plaintiff's arrest and/or detainment.

71. As a result of Defendants' aforementioned conduct, Plaintiff was subjected to an illegal, improper, and false seizure and arrest by the Defendants and taken into custody and caused to be, detained, confined, incarcerated, searched, institutionalized, hospitalized and charged with a felony, without any probable cause, privilege, or consent.

72. All of the aforementioned acts of the Defendants constituted false arrest under 42 U.S.C. § 1983 and was a violation of Plaintiff's Fourth and Fourteenth Amendment rights..

73. As a direct and proximate result of the Defendants' violations of Plaintiff's constitutional rights, Plaintiff has suffered severe and substantial damages. These damages include lost salary, lost employee benefits, lost raises, diminished earnings capacity, lost career and business opportunities, litigation expenses including attorney fees, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish and distress and other compensatory damages, in an amount to be determined by a jury and the Court.

## THIRD CLAIM FOR RELIEF:
## FALSE IMPRISONMENT UNDER 42 U.S.C. § 1983

74. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in paragraphs 1 through 73 with the same force and effect as if fully set forth herein.

75. That the Defendants falsely imprisoned Plaintiff in that Defendants intended to confine Plaintiff, the Plaintiff was conscious of the confinement, the Plaintiff did not consent to the confinement and the confinement was not otherwise privileged.

76. That there was no sufficient probable cause for Plaintiff's imprisonment and/or

detainment.

77. As a result of Defendants' aforementioned conduct, Plaintiff was subjected to an illegal, improper, and false seizure and arrest by the Defendants and taken into custody and caused to be, detained, confined, incarcerated, searched, institutionalized, hospitalized and charged with a felony, without any probable cause, privilege, or consent.

78. All of the aforementioned acts of the Defendants constituted false imprisonment under 42 U.S.C. § 1983 and was a violation of Plaintiff's Fourth and Fourteenth Amendment rights.

79. As a direct and proximate result of the Defendants' violations of Plaintiff's constitutional rights, Plaintiff has suffered severe and substantial damages. These damages include lost salary, lost employee benefits, lost raises, diminished earnings capacity, lost career and business opportunities, litigation expenses including attorney fees, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish and distress and other compensatory damages, in an amount to be determined by a jury and the Court.

## FOURTH CLAIM FOR RELIEF:
### EXCESSIVE FORCE UNDER 42 U.S.C. § 1983

80. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in paragraphs 1 through 79 with the same force and effect as if fully set forth herein.

81. The degree of force used by Defendants was excessive, unreasonable, and unwarranted.

82. Defendants' actions were intentional, willful, malicious, egregious, grossly reckless

and negligent, unconscionable, and unprovoked.

83. All of the aforementioned acts of the Defendants constituted excessive force under the laws of the State of New York and the Defendants are liable said damage. As a direct and proximate result of the violation of their constitutional right to be free from false arrest by the Defendants, Plaintiffs suffered serious personal injuries and special damages as alleged in this Complaint and are entitled to relief under 42 U.S.C. §1983.

84. As a direct and proximate result of the Defendants' violations of Plaintiff's constitutional rights, Plaintiff has suffered severe and substantial damages. These damages include lost salary, lost employee benefits, lost raises, diminished earnings capacity, lost career and business opportunities, litigation expenses including attorney fees, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish and distress and other compensatory damages, in an amount to be determined by a jury and the Court.

## FIFTH CLAIM FOR RELIEF:
## VIOLATION OF FIRST AMENDMENT FREE SPEECH RIGHTS

85. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in paragraphs 1 through 84 with the same force and effect as if fully set forth herein.

86. That Plaintiff's speech and actions are protected by the First Amendment of the United States Constitution.

87. That Plaintiff's speech and actions were made in the confines of the Teachers' Lounge amongst fellow teachers and friends.

88. That the Teachers' Lounge was a "safe haven" where teachers could vent their

frustrations and share personal issues in private with fellow teachers and friends.

89. That Plaintiff had an interest protected by the First Amendment and Defendants' actions were motivated or substantially caused by her exercise of this right and Defendants' actions effectively chilled the exercise of the First Amendment.

90. That Plaintiff's speech and actions did not constitute a "true threat" and was thereby protected under the First Amendment.

91. That there was no sufficient probable cause for the arrest and thus Plaintiff was being punished for her speech and actions.

92. All of the aforementioned acts of the Defendants constituted a violation of Plaintiff's First Amendment rights and the Defendants are liable for said damage. As a direct and proximate result of the violation of her constitutional rights to be free from false arrest and false imprisonment for exercising her First Amendment rights, Plaintiff suffered serious personal injuries and special damages as alleged in this Complaint and are entitled to relief under 42 U.S.C. §1983.

93. As a direct and proximate result of the Defendants' violations of Plaintiff's constitutional rights, Plaintiff has suffered severe and substantial damages. These damages include lost salary, lost employee benefits, lost raises, diminished earnings capacity, lost career and business opportunities, litigation expenses including attorney fees, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish and distress and other compensatory damages, in an amount to be determined by a jury and the Court.

## SIXTH CLAIM FOR RELIEF:
## MUNICIPAL LIABILITY UNDER *MONELL*

94. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in paragraphs 1 through 93 with the same force and effect as if fully set forth herein.

95. Defendant P.O. GREG E. EVERT searched, and arrested Plaintiff despite a lack of evidence against her, notwithstanding his knowledge that said arrest would jeopardize Plaintiff's liberty, well-being, safety, and constitutional rights.

96. The acts complained of were carried out by the aforementioned Defendant P.O. GREG E. EVERT in his capacity as police officer and official, with the entire actual and/or apparent authority attendant thereto.

97. The acts complained of were carried out by Defendant P.O. GREG E. EVERT in his capacity as police officer and pursuant to the customs, policies, usages, practices, procedures, and rules of NYC and the NYPD, all under the supervision of ranking officers of said department.

98. The aforementioned customs, policies, usages, practices, procedures, and rules of NYC and the NYPD included, but were not limited to, initiating and continuing criminal proceedings without evidence of criminal activity.

99. The foregoing customs, policies, usages, practices, procedures, and rule of NYC and the NYPD constituted deliberate indifference to the safety, well-being, and constitutional rights of Plaintiff.

100. The foregoing customs, policies, usages, practices, procedures, and rule of NYC and the NYPD were the proximate cause of the constitutional violations suffered by Plaintiff as alleged herein.

101. The foregoing customs, policies, usages, practices, procedures, and rule of NYC and the NYPD were the moving force behind the constitutional violations suffered by Plaintiff as

alleged herein.

102. Defendant P.O. GREG E. EVERT in his capacity as police officer and official, while acting under color of state law, was directly and actively involved in violating the constitutional rights of Plaintiff.

103. That defendant NYC had a policy, custom or practice of investigation or addressing allegations related to "terrorism" in a manner that displayed a deliberate indifference to the constitutional rights of those within its jurisdiction and to Plaintiff herein.

104. That Defendant NYC trained its police officers and Defendant P.O. GREG E. EVERT to be overly aggressive and to "arrest first and ask questions later" when it came to investigations or allegations of "terrorism."

105. That Defendant NYC exhibited deliberate indifference by its failure to train its employees to handle recurring situations (i.e., stops and arrests related to "terrorism" without probable cause) that presented an obvious potential for a constitutional violation where such failure to train results in a constitutional violation.

106. That the acts of Defendants deprived Plaintiff of her rights under the United States Constitution. Defendants acted pursuant to a *de facto* official policy or a longstanding practice or custom of NYC and NYPD.

107. That Defendant NYC failed to properly train its police officers and Defendant P.O. GREG E. EVERT and its policies or customs that it sanctioned led to the constitutional violations of Plaintiff.

108. That Defendant NYC caused Plaintiff to be subjected to the deprivation of her constitutional rights.

109. Defendant NYC, as municipal policymaker in the training and supervision of

Defendant police officers, has pursued a policy and custom of deliberate indifference to the rights of persons in their domain who suffer violations of their freedom from false arrest, false imprisonment, the excessive use of force and unreasonable force and freedom from deprivation of Liberty without Due process of law in violation of the First, Fourth and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983, and the Constitution and laws of the State of New York.

110. As a direct and proximate result of the Defendants' violations of Plaintiff's constitutional rights, Plaintiff has suffered severe and substantial damages. These damages include lost salary, lost employee benefits, lost raises, diminished earnings capacity, lost career and business opportunities, litigation expenses including attorney fees, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish and distress and other compensatory damages, in an amount to be determined by a jury and the Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and prays for the following relief, jointly and severally, against the Defendants:

1. Special and compensatory damages in the amount of FIVE MILLION ($5,000,000.00) DOLLARS.

2. Punitive damages in the amount of ONE MILLION ($1,000,000.00) DOLLARS.

3. Reasonable attorney's fees and costs; and

4. Such other and further relief as this Court deems just and proper.

Dated:   New York, New York
         February 24, 2014

                              Respectfully submitted,

                              DANIEL I. NEVELOFF
                              THE NEVELOFF LAW FIRM, PC
                              Attorneys for Plaintiff
                              30 Broad Street, 35th Floor
                              New York, NY 10004
                              (212) 964-2066
                              Email: Daniel@Neveloff.com